(No. 3872—

JOHN REHS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 13, 1945.*

BARRETT, BARRETT, COSTELLO & BARRETT AND W. H. SHANNER, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

On August 28, 1943, John Rehs, above named claimant, was a Police Officer in the Department of Public Safety, Division of State Police. On that day he was riding his motorcycle out of the LaSalle-Wacker Garage at 221 N. LaSalle Street, Chicago, travelling over a wet pavement. As he left the ramp of said garage the motorcycle skidded going out of control and fell to the pavement, pinioning the claimant's right leg under it. He was immediately removed to St. Luke's Hospital where he was placed under the care of Dr. H. B. Thomas, Professor Emeritus of the Department of Orthopedics, University of Illinois College of Medicine. He remained under the care of this surgeon until the 22nd day of April, 1944. On August 4, 1944, he filed his claim for benefits under the Workmen's Compensation Act.

The claimant's testimony was taken on the 13th day of December, 1944. At that time a stipulation was entered into by and between counsel and made a part of the record, and is as follows:

That John Rehs, the claimant herein, sustained an accidental injury on August 28, 1943, which did arise out of and in the course of his employment by the respondent, State of Illinois;

That on that date the claimant and the respondent were operating under and subject to the terms and provisions of the Workmen's Compensation Act;

That claimant gave notice to the respondent of the occurrence of said accident within thirty days thereafter, and that a claim for compensation was made on account thereof within six months, as is required by the provisions of the Workmen's Compensation Act;

That the annual wage of the claimant for one year next preceding the date of said accident was $2,113.50;

That the medical on account of said accident was furnished by the respondent herein;

That the respondent paid temporary total disability until the claimant returned to work following said injury;

That claimant had three children under the age of sixteen years at the time of the accident;

That all records and files maintained in the regular course of business by any of the departments, commissions, boards or agencies of the respondent and all departmental reports made by any officer thereof relating to any matter or cause pending before the Court shall be prima facie evidence of the facts set forth therein;

That the only question in dispute is whether or not the claimant is entitled to additional compensation for specific loss of use of his right lower extremity by reason of the injuries, and the proofs in this hearing will be limited to that question.

Claimant testified that a cast was placed on his injured limb and remained there for approximately fourteen weeks; that after it was removed he received physiotherapy treatments at Dr. Thomas' office and in November he returned to work in the Department of Public Safety as a clerk at Elgin, Illinois, and in March, 1944, he returned to his regular duties as a Police Officer. He further testified that after he had returned to his regular work as a Police Officer, he had considerable trouble with the injured limb; that sometimes he would wake up with cramps and the muscles of the leg would tighten, this especially when there was a change in the weather; that he suffered considerable pain and swelling persisted; he further testified that the right foot tired easily and that he was compelled to have an arch built up in his right shoe to support the arch; that he experiences pain through the calf of the leg and through the ankle which also involves the whole foot including the toes; that this pain is not constant but is intermittent; that he does not have full functional use of the right foot, that he had prior to the accident and that especially after he does any amount of walking the swelling is very noticeable; that the leg is not nearly as strong now as it was prior to the accident; that the ankle turns easily if he steps on a small object while walking.

Dr. H. B. Thomas, during the course of treatments rendered the claimant, filed a series of reports with the Department during August, September, October, 1943, January, February, March and April, 1944. These reports are made a part of the Departmental report of the Division of State Police and is prima facie evidence under the rules of this Court.

April 22, 1944, Dr. Thomas submitted his final report which said: "x-ray shows a comminuted fracture of the fibula, 9 cm from proximal end. There is a spiral fracture in the lower ½ of the tibia. The fragments of tibia were aligned and held with a screw. He had pain over the fracture site and ankle for which he received physiotherapy. Prognosis good."

Dr. Hal P. Wells was called to testify on behalf of claimant; he testified he examined claimant at his office in Chicago on the 11th day of December, 1944. He made x-ray films which have been introduced in evidence as claimant's exhibit one, which shows a fracture of the fibula and the ankle joint. He testified that the x-ray showed the beginning of arthritic changes at the ankle joint particularly on the articular surface of the astragalus joint, also in the tarsal region of the foot which articulates with the tibia in making the ankle joint; that the arthritis was creating an unevenness of the articular surface of the bone; that there were some definite spurs shown in the anteroposterior view upon the articular surface of the tibia; that in reference to the fibula, the x-ray showed it was united in good axis and does not show any particular disability in itself; he further testified that the fracture was a very severe one and was in very close proximity to the ankle joint; this arthritis accounted for the swelling and pain over the site of the fracture in the ankle joint and the foot about which the claimant had testified; that there were injuries to three very important nerves, two of which pass very close to

the fracture and must have been involved immediately and during the subsequent convalescent period, when the fibrous tissue was formed. He testified this condition is permanent and that it accounts for claimant's inability to do much standing or walking, and causes weakness of the right leg and foot.

In response to a hypothetical question he stated that the objective findings about which he had testified, viz., the excessive callus, the permanent swelling, which is fibrosis, the broken-down arch, and the arthritis were all caused by the injury and these conditions are permanent.

Under the stipulation filed in this case we find claimant's annual wage for a year preceding the accident amounted to $2,113.50, his average weekly wage therefore would be $40.64. The record further discloses that at the time of the accident claimant was married and had three children under the age of sixteen years dependent upon him for support; his weekly compensation rate therefore would be $21.15. Claimant was not able to return to work for the respondent until the 4th day of November, 1943, being 9 4/7 weeks, for which he is entitled to temporary total compensation amounting to the sum of $202.44. However, the record discloses that the respondent paid to the claimant the sum of $448.40 as salary during that period for unproductive work, which is an over-payment to claimant by respondent, of $245.96 which must be deducted.

From a careful consideration of all the evidence in this case the Court is of the opinion that claimant has suffered 50% permanent loss of use of his right leg. Under Section 8, Par. (e)-15 claimant is entitled to $21.15 for a period of 95 weeks amounting to the sum of $2,009.25 for 50% permanent partial loss of use of his

right leg, from which must be deducted the sum of $245.96, leaving the sum of $1,763.29.

An award is therefore entered in favor of claimant, John Rehs, in the sum of $1,763.29. Of this amount the sum of $1,501.65 has accrued to March 14, 1945, and is payable in a lump sum forthwith. The remainder amounting to the sum of $261.64 to be paid to claimant at the rate of $21.15 per week for 12 weeks and one final payment of $7.84.

This award is subject to the approval and the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."